IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

ANGEL D. HOUCK,
Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,
Defendant.

4:13CV3216

MEMORANDUM OPINION

This matter is before the Court on plaintiff, Angel Houck's ("Houck") appeal of a final decision by the Acting Commissioner of the Social Security Administration ("SSA") denying Houck's application for disability benefits. The Court finds that the Administrative Law Judge ("ALJ") did not err and the decision of the ALJ will be affirmed.

**PROCEDURAL BACKGROUND**

Houck filed an application for disability insurance benefits on March 23, 2011 (Tr. 69). The application was initially denied on June 3, 2011 (Tr. 75-79). The application was then denied on reconsideration on August 29, 2011 (Tr. 83-87). After a hearing held June 26, 2012, the ALJ found that Houck was not under a "disability" as defined in the Social Security Act (the "Act") (Tr. 18, 21). The Appeals Council of the SSA denied Houck's request for review on October 23, 2013

(Tr. 1). Houck timely filed this appeal on December 18, 2013 (Filing No. 1, *see* 42 U.S.C. § 405(g)). The Court now reviews the ALJ's decision, which stands as the Commissioner's final decision.

**FACTUAL BACKGROUND**

Houck was a twenty-year-old woman on her alleged onset date, January 1, 1991, and held a General Educational Development equivalence certificate ("GED") (Tr. 62). Houck alleges disability due to severe obesity, chronic low back pain, asthma, migraine headaches, back pains, obstructive sleep apnea, and bilateral carpal tunnel pain (Filing No. 14, at 4).

During numerous hospitalizations at the Great Plains Regional Medical Center in North Platte, Nebraska, Houck has been diagnosed as obese. A woman her height should weigh no more than 140 pounds. However, she has weighed more than that amount since 2009. On July 12, 2009, Houck weighed 209 pounds. She gained four pounds by August 2009 but lost one pound by November 2009. At her next weigh-in on July 16, 2010, Houck weighed 214.6 pounds and later that month, she weighed 215 pounds. In November, 2010, an examiner stated flatly that Houck was obese. In March and May of 2011, Houck reached 220 pounds, but jumped to 233 by the time of her SSA Medical Report. At the time of the ALJ's hearing, Houck stood 5' 2" tall and weighed 216 pounds (Tr. 43).

**ADMINISTRATIVE HEARING**

On June 26, 2011, the ALJ held a hearing (Tr. 40-68). Houck testified she was last employed in 1991 at A&W Restaurant where she was terminated without explanation; however she has been employed numerous times thereafter (Tr. 44). In fact, Houck worked at Wal-Mart from 2000 through 2001, at Goodwill from 2001 through 2002, at a movie rental store in 2003, at Woolley Bus Company (a Subway sandwich shop) from approximately 2005 through 2007, and then at Comfort Inn from 2007 until approximately 2009 (Tr. 44-46). The ALJ determined Houck's employment at the movie rental store in 2003 constituted substantial gainful activity ("SGA"), but dismissed the other occupations as irrelevant because each did not constitute SGA (Tr. 47). At the movie rental store, Houck would lift boxes which weighed forty to fifty-five pounds (Tr. 64).

The ALJ then focused on Houck's alleged physical impairments, including her weight (Tr. 47). Houck attributed her back, neck, and hip pain to a car accident in 1991 (Tr. 47-48). Houck took a variety of medication for her pain but never underwent surgery (Tr. 49). The ALJ then discussed Houck's migraines and migraine medication, which she only began taking the month before the hearing (Tr. 50-51). These migraines caused Houck to miss physical therapy appointments (Tr. 54). Next, the

ALJ discussed Houck's sleep apnea and treatment (Tr. 51). The ALJ lastly discussed Houck's carpal tunnel, which did not require her to have surgery but did require her to wear braces every night (Tr. 51-52).

The ALJ shifted then to Houck's mental impairments. Houck was prescribed anti-depressants, and, despite conflicting narratives, had been substance-free for at least two-years (Tr. 52-53).

The ALJ and her attorney asked Houck how her impairments, in combination, limited her. Houck answered she could only walk 100 yards because of her breathing, back pain, and hip pain (Tr. 55). Houck smoked five to six cigarettes a day (Tr. 57). Houck did not have a walking aid (Tr. 55). She could stand and sit for no longer than fifteen minutes (*Id.*). Houck could lift ten pounds with either of her hands (*Id.*). In daily activities, Houck cared for her children the best she could, attended medical appointments, did laundry, and walked the dogs, though she relied upon the assistance of her daughter for daily chores (Tr. 58). In addition, Houck avoided chores which caused her to bend and she testified she could not perform secretarial work (Tr. 58, 63).

The ALJ then examined the Vocational Expert ("VE"). First, the ALJ asked the VE to classify Houck's past work. The

VE described Houck's work at the movie rental store as a salesclerk[1] (Tr. 64). Second, the ALJ asked whether the following hypothetical person with several limitations could perform Houck's previous employment:

> an individual who could occasionally lift 20 pounds, frequently lift or carry up to 10 pounds, sit for up to six hours, stand or walk for approximately six hours in an eight-hour day with normal breaks. Occasionally climb ramps or stairs. Occasionally climb ladders, ropes or scaffolds, frequent balancing, occasional stooping, frequent kneeling, and crouching and occasional crawling, occasional overhead reaching, bilaterally. Avoid repetitive fingering activity such as typing. Avoid concentrated exposure to extremes of cold and heat. Avoid concentrated exposure to wetness and humidity. Avoid concentrated exposure to vibration and to pulmonary irritants, such as fumes, odors, dust, and gases.

(Tr. 64-65). The VE answered Houck could not perform work as a salesclerk (Tr. 65).

The ALJ asked if there was any position which the same hypothetical person could perform in the regional or national economy (*Id.*). The VE answered such a person could perform work

---

[1] Dictionary of Occupational Titles ("DOT") code 290.477-014; a light-exertional, semi-skilled position wherein the worker performs light-medium to heavy lifting (Tr. 64).

as a inserting machine operator,[2] a trim attacher,[3] and ticket taker[4] (Tr. 65-66).

Third, the ALJ asked the VE what positions were available for the same hypothetical person with the same limitations but with the following additional limitation, "work being limited to simple routine repetitive tasks involving only simple work-related decisions with few if any workplace changes." (Tr. 66). The VE answered that such a person could perform the same jobs he listed previously and could not perform Houck's previous employment (*Id.*).

Fourth, the ALJ asked the VE what positions were available for the same hypothetical person with the same limitations but with additional limitation of absenteeism one day a week, in light of Houck's migraines (Tr. 66). The VE answered that such a person could not perform competitive employment and could not perform Houck's previous employment (Tr. 67).

**THE ALJ'S FINDINGS**

The ALJ found Houck had not engaged in substantial gainful employment since January 1, 1991 (Tr. 23). The ALJ

---

[2] DOT code 208.685-018; 687 jobs within Nebraska ("NE"); 43,215 national ("US") jobs.

[3] DOT code 692.685-230; 245 NE jobs; 28,675 US jobs.

[4] DOT code 344.667-010; 2,417 NE jobs; 21,000 US jobs.

concluded Houck had the following severe impairments: cervical kyphosis with history of old compression fracture T7, left shoulder status post rotator cuff repair, mild carpel tunnel syndrome, sleep apnea, asthma, migraine headaches, and obesity (*Id.*). The ALJ did not conclude, however, that Houck had an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 25). The ALJ went on to ascribe Houck's Residual Functional Capacity ("RFC") (*Id.*). The ALJ determined that Houck could perform the following tasks:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) in that she can lift 20 pound [sic] occasionally and 10 pounds frequently, sit for 6 hours out of an 8 hour workday and stand and walk for 6 hours out of an 8 hour workday with normal breaks. The claimant can occasionally climb ramps or stairs. . . , occasionally climb ladders, ropes or scaffolds. She can frequently balance, kneel and crouch. She can occasionally stoop and crawl. She can occasionally perform overhead reaching bilaterally. The claimant should avoid repetitive fingering activities such as typing. She should avoid concentrated exposure to extreme cold, heat, wetness and humidity. The claimant should avoid concentrated exposure to vibration and to pulmonary irritants such as fumes, odors, dust and gases.

(Tr. 25). The ALJ considered Houck's obesity in his calculations (Tr. 27). Specifically, the ALJ made the following statement:

> The claimant is also extremely obese. The claimant is 5 feet 2 inches tall and has consistently weighed approximately 220 pounds. The claimant's body mass index is 40, which reflects extreme obesity. I have considered the claimant's obesity under the standard set forth in Social Security Rule 02-1p. The claimant's obesity imposes limitations that would restrict her from performing work at a greater exertional level.

(*Id.*). The ALJ went on to describe Houck's lack of objective medical evidence to substantiate more substantial deficits in "strength, neurological function, range of motion, posture, sensation, reflexes, pulses or gait." (Tr. 28). The ALJ also mentioned Houck could perform "light work without any manipulative limitations with environmental limitations" and that Houck was "able to engage in several activities on a daily basis, which indicates she is capable of engaging in physical activity." (Tr. 29).

Consequently, the ALJ found Houck was not disabled as defined in the Act (Tr. 31).

**STANDARD OF REVIEW**

In reviewing a decision to deny disability benefits, the district court's role under 42 U.S.C. § 405(g) is limited to

determining whether substantial evidence in the record as a whole supports the Commissioner's decision. *Harris v. Shalala,* 45 F.3d 1190, 1193 (8th Cir. 1995). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008). If it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits. *Id.* (quotations and citations omitted). Thus, the Court will uphold the Commissioner's final decision "if it is supported by substantial evidence on the record as a whole." *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008).

**LAW & ANALYSIS**

In her brief, Houck asserts two errors to the ALJ's decision: the ALJ erred when she failed to identify the limitations caused by Houck's obesity and the ALJ failed to discuss the effect of those limitations. Filing No. 14, at 3-4. Houck's argument is explicate:

> at a minimum the ALJ should identify the limitations and then discuss the effect of limitations on claimant's ability to perform work. The ALJ fully failed to identify the limitations and of course did not discuss them because they weren't mentioned.

*Id.* at 5. In support of this proposition of law, Houck cites Social Security Disability Advocate's Handbook § 1103.1 and *Pfitzner v. Apfel*, 169 F.3d 566, 569 (8th Cir. 1999). Houck's position is without merit for two reasons.

First, the *Pfitzner* case is clearly distinguishable from this case. The Eighth Circuit remanded that case because the ALJ's opinion lacked specific reasons why the claimant was able to return to previous employment. *Pfitzner*, 169 F.3d at 569. In the current case, the ALJ did not find Houck could return to her previous employment. Therefore, the *Pfitzner* holding is inapplicable here.

Alternatively, if the holding could be read so broadly that it were applicable here, the Court finds the ALJ's opinion contains sufficient specificity. In *Pfitzner*, the ALJ made "no specific findings as to the detailed demands of Pfitzner's past relevant work." *Id.* However, the ALJ in this case has made specific findings and statements regarding Houck's obesity and limitations. Tr. 23, 25, 27, 28. If applicable, the ALJ in this case has met the standard in *Pfitzner*.

Second, Houck's arguments concerning SSR 02-1p are misplaced. Under Social Security Ruling ("SSR") 02-1p, the SSA explained the purpose in deleting listing 9.09; Obesity. The SSA stated ALJs should still consider obesity under the preface

paragraphs of "the musculoskeletal, respiratory, and cardiovascular body system listings that provide guidance about the potential effects obesity has in causing or contributing to impairments in those body systems." SSR 02-1p, 2002 WL 34686281, at *1. Also, the SSR addresses how an ALJ should make its determinations regarding obesity at the RFC stage of evaluation. *Id.* at *8. Here, the ALJ complied with the SSR because the ALJ evaluated Houck's muscular, skeletal, respiratory, and cardiovascular systems and because the ALJ evaluated Houck's ability to perform routine movements. Tr. 23, 25, 27, 28, 30; SSR 02-1p, 2002 WL 34686281, at *8.

**CONCLUSION**

Substantial evidence in the record as a whole supports the ALJ's findings. The Commissioner's denial of plaintiff's benefits claim will be affirmed. A separate order will be entered in accordance with this memorandum opinion.

DATED this 1st day of July, 2014.

BY THE COURT:

/s/ Lyle E. Strom

______________________________
LYLE E. STROM, Senior Judge
United States District Court